Case number 23-1354, Aaron Kosch v. Traverse City Area Public Schools et al. All arguments not to exceed 15 minutes per side. Mr. Mandel Allwile for the appellant. I may please the court, on behalf of the plaintiff appellant Aaron Kosch, I am Mandel Allwile. We are requesting three minutes for rebuttal. I have one major issue, your honors, to demonstrate why the district court's grant of summary judgment in this matter should be reversed. It is imperative to note that, quintessentially, constructive discharge is a fact-intensive inquiry that is usually reserved for a jury. Where an employer gets an employee to resign based on deceptive means or misstatements, that is a violation, in this case, of constitutionally protected rights because she had a property interest in her employment. She also had liberty interest based on what could have occurred to her. Kosch was constructively discharged. In a constructive discharge case, the law is that a reasonable jury or a reasonable judge should place themselves in the shoes of that person as a reasonable employee. In this case, if you really read the district court judge's opinion correctly, you will see that the basis of reversal is found within the four corners of those pages. The court stated that there are two circumstances where employees' resignations will be deemed to be involuntary for due process purposes. One, where the employer forces resignation by coercion or duress. Two, when an employer obtains resignation by deceiving or misrepresenting a material fact to the employee. That can be found at page ID 1279 and page 10 of the opinion citing a Third Circuit case. In this case, both of those things occurred. There was a misanalysis by the district court where it said in your decision in Logan v. Denny's that we didn't go through any of those criteria. That is just not true. We showed through the actions, it fell within the criteria in Logan. And Logan, as you would remember, adopted criteria from the Fifth Circuit. Incredibly, Koch was an excellent teacher. The cases you are citing, are those Title VII constructive discharge cases? The Logan case, if I remember, was a Title VII case. It was a racial discrimination case against Denny's. What are the qualified immunity analysis? You not only have to show a violation, you have to show a clearly established law, typically in our circuit. That is true. What is your, even if there is some theory, if we credit your theory that this amounted to a procedural due process violation, what is the binding case in our court that sets this out? And what is the case that has facts that are similar to this one? In terms of what would dispel the qualified immunity? Yes, the clearly established law that would have put the district on notice that these actions were out of bounds. Well, the clearly established laws are those very things of due process. The right to legal representation. That's not, that's not. Well, I need a case. I need a case from our circuit that says what these. Well, a case that I believe, Your Honor, you were on the panel on was Yerkes versus Ohio. That if you demonstrate that the defense. This was the traffic, this was the state highway. Yes, exactly. And the right was clearly established at the time. All the people from TCAPS testified there is a right to counsel. Everyone, the superintendent testified to that. The, Shana Billers testified to that. The board members, everybody agrees that fundamental principles, and I have gone 40 years without really citing Penoyer versus Neff, but I was able to do those. Those clear establishments that are necessary for a civilized society that we take for granted are part of the due process. In this case. And right to counsel is usually like a Sixth Amendment criminal issue. Well, but not only right to counsel, right to representation. There would be no doubt that if TCAPS had said you can't have a union representative in this case, there's nothing that would suggest that that was not a denial of her rights. In this case, the situation was even worse. They, my client. Is Yerkes the best case you have that sets out the procedural due process right that was violated here that's been clearly established in our circuit? The case you cite in your brief is a state case as I recall. Well, the case for constructive discharge is Manning. We have a Seventh Circuit case that I just found that is right on point. It is almost identical to this case. Yes, I just. It's a 30-year-old case. It's a 30-year-old case, and I apologize for not finding it in my brief. I'm unfortunately the researcher, the brief writer, and the ultimate take out the garbage as well. But I did, and I spent an embarrassingly amount of time preparing for this oral argument. And in looking at that, Your Honor, Spreen was right on point, and there's no other case. She was a county employee, 15 years, was told that she had a suspension notice for a serious infraction. It wasn't put in writing. They tell her she's going to lose benefits, lose pension benefits. They get her to resign based on a series of false statements, and she resigned. The district court in that case denied the constructive discharge. I mean, denied summary judgment. And the Seventh Circuit also said that she was denied due process, and the fact was summary judgment would be denied. She requested an attorney. They lied to her. They told her there was a policy, no attorneys. We know that's not true. Everybody above her testified there was no such policy. But how do we know she lied and intentionally misrepresented that statement? Because when another non-union teacher, Michael Markley, had three infractions, one of which for improperly touching a young female student, Mr. Markley testified she offered him an attorney. So we know she lied on that. We know she got a union representative to come and appear to represent my client, even though she wasn't a member of the union. But that union representative at the same time was filing a grievance against my client based on the woman's son who published the recording. I mean, I went to Russia 20-some years ago to adopt a child, and I didn't experience anything that egregious, and I could tell you some very interesting stories from that trip. They commissioned a felony to get her to resign. Certainly, no one could suggest that state- When you say commissioned, are you saying that they caused L.H. to make the recording? L.H. committed a felony by making the recording. The only person L.H. sent that recording to was Joyce Battle's son. He published it. He committed a felony. And then in using that recording to get Mrs. Koster to resign- You said they, the Traverse City Board, did not commission it. But the representation by Cindy Burke, as the head of human resources for TCAPS, certainly did. And Cindy Burke knew that was untrue because she tells her she violated FERPA. FERPA, I had never even heard of it, to be honest, before this case. Teachers certainly- Did she say that she did violate it or that she might? That's why you have a proceeding, is to find out what happened. She implied that she violated it, and that's- And when I asked her at her deposition, can you give me any way FERPA was violated? She couldn't. I asked the union representative, can you give me a single way FERPA was violated? They couldn't. So if they couldn't give me a way, how could they tell her that FERPA was violated and you might be terminated? She couldn't. They lied. They out and out lied. Mr. Orwell, this is maybe a continuation of Judge Boggs' question here. When you say that they told her that she violated, it confuses me a little bit. Because as I read the record, it appears to me that what happened was she was given- There was an investigation into whether FERPA was violated. There was an investigation as to whether policies were violated. And additionally, as to whether or not your client was going to be terminated, she was given some advice as to the possibilities of what would happen. What part of that do you disagree with? Well, number one, the investigation obviously had just started in terms of what happened. What we do know, though, it's really the culmination of all the events that occur to put yourself in the reasonable shoes of a person of Mrs. Koch. Twenty-seven years spotless. You know, when dealing with people who often get in trouble, they get in more trouble and they're not very affected by it. They've been there before, done that. Mrs. Koch was mortified by this. An attorney, if she would have had competent representation in that meeting, those misrepresentations would not have forced her to resign. If you had somebody, as her affidavit stated, and the judge below doesn't even look at her affidavit, the judge makes a misstatement where he said, we had to prove they told her she would lose her pension. That was never our claim. Our claim was she wouldn't be able to maximize her pension. So the union, he also said, we didn't prove the union. Wasn't that contingent, though? She wouldn't be able to maximize her pension if she were found to be responsible for violating a policy, something which hadn't occurred, correct? The same thing was true in Manning, the State of Michigan case. The same thing was true in Spring, the Seventh Circuit case I just told you. The question is, under this totality of the circumstances, she was faced with whether there's, I'm not saying I'm going to win. I'm just saying that, God, there are so many issues of material fact that reasonable people could say this person was constructively discharged, that summary judgment in this case was grossly inappropriate. This woman was treated very unfairly. They repeatedly lied to her. There was no proof for any of that. The way you know that on FERPA, the principal, Marshall Perkins, he tape recorded a kid burning a piece of art that was then put on social media by his son. She wrote him up, no FERPA violation, a suspension, a write-up for not protecting his phone. I see my time is up. And if there's any questions, I will certainly address them. Okay, you'll have your rebuttal time. Thank you. Thank you, Your Honor. Good morning. Good morning. May I proceed, Your Honors? Good morning, Your Honors, and may it please the Court, Jacob Lyday here presenting oral argument on behalf of Traverse City Area Public Schools and Dr. Cindy Burke. Your Honors, this case was properly dismissed by the Western District of Michigan in a well-thought-out opinion by Judge Jonker. Her claim for procedural due process violations fails for a number of reasons. In summary, it fails because plaintiff failed to exhaust her administrative remedies. Under state and federal law, the instant suit would be barred. It fails because ultimately the defendants did not deprive the plaintiff of a property right that she enjoyed under the law. It fails because all due process that plaintiff was entitled to at the stage of the proceedings at which her resignation occurred, all due process had been provided at that point. Was she entitled to her own legal counsel at that hearing or that meeting? Your Honor, she was not. The case of Potts v. Goebbels, which was a decision from this court in 2017, stated that at the time of a pre-deprivation investigative hearing, all that is charges against her and an opportunity to present her side of the story. At this conference that occurred on the date that plaintiff resigned, which, by the way, had not actually been concluded. It was rescheduled to begin again the next day. She was provided with those things. There were discussions of the suspected violations, and she had the opportunity to present questions. To Dr. Sidney Burke, as well as in the presence of the union representative. In general, when we look at the adequacy of a pre-deprivation process, would we not usually look at it up to the point that a deprivation occurred? By that I'm saying if you have a meeting on day one and maybe it's not good enough, and you have a meeting on day two and three where more process is provided, isn't that the way you would look at it? Not just at each step, you'd look at the whole process? Your Honor, the law indicates that it's only when charges have been formally filed with the Board of Education that the right to counsel would be afforded. In this instance, they were still investigating to see whether charges would be brought. But that leads to an interesting point, because without action against her constituting termination or demotion, which under the Michigan Teacher Tenure Act, demotion has to be suspension without pay for 15 days or greater. There is no deprivation of a property interest to begin with at this point. The claim of constructive discharge fails for a number of reasons as well. And lastly, qualified immunity should apply to Dr. Burke, everything else considered. First and foremost, this Court can affirm the opinion of the lower court based on the failure to exhaust her remedies. She was required to exhaust the administrative remedies available to her through her contract, which included a grievance procedure. She never attempted to file a grievance. She never asked about retracting her resignation and never made an inquiry about rejoining Traverse City Area Public Schools. If it really was a constructive discharge, what kind of administrative remedies would you have needed to exhaust? I mean, if you take the other side's views at face value, if the pressure was such that it was a constructive discharge, I don't quite see how that connects. I mean, is that simply an independent grounds if you don't believe constructive discharge? Your Honor, the master agreement, collective bargaining agreement that Traverse City Area public school teachers were subject to contains the procedure for doing so. In addition, there are cases that we've cited in our brief in which the, for example, I think it's Michigan Court of Appeals case. It says that constructive discharge claims don't waive the exhaustion requirement. And those claims have proceeded even though a constructive discharge claim is being made because it goes and flows through the union. So that grievance can still be made. But in addition to that, had she contested these charges at a board meeting, there is an entirely separate state-created tenure commission which would have also reviewed for administrative remedies. Well, that's true if the claim is one of constructive discharge. But this isn't a constructive discharge claim. True or not, I mean, this is a due process claim. The reason that she's saying that her due process was taken away was because she was constructively discharged as a result of some of the factual things here. So I'm not entirely following your exhaustion of administrative remedies argument with respect to the due process claim. What tells us that for a due process claim that is based on constructive discharge, that there is this requirement to exhaust the administrative remedies? So, Your Honor, my understanding is that the due process claim is the main issue here. But the claim being made of constructive discharge is being used to get around the resignation that she made. And so if Your Honor would mind reframing your question. Well, so for instance, one time that we see that there has to be an exhaustion of administrative remedies for a Section 1983 case is if there's a case that's brought pursuant to the Prisoner Litigation Reform Act. Prisoner Litigation Reform Act has an express provision allowing for or requiring exhaustion of administrative remedies in order for you to pursue a claim via 1983 or anything else. There's no, at least to my knowledge, I'm not aware of any requirement in this context that has something like that. She's making, it is a 1983 claim. She is claiming a due process violation. But I'm not clear what authority says that she has to exhaust her administrative remedies. You know, perhaps it makes logical sense that if it's a due process claim, then you have to use whatever process is available to you. But as a stand-alone failure to exhaust administrative remedies, that's what I'm not seeing the precedent for. Your Honor, I would turn the Court's attention to the case of Monroe v. International Union, which was a Sixth Circuit decision from 1983 in which that Court found that the failure to exhaust union appeals would bar a suit because of the failure to exhaust those remedies. Your Honor, as I mentioned earlier, the Michigan Teacher Tenure Act defines a demotion as unpaid suspension of 15 days or more. Herein, the plaintiff was on paid administrative leave for a single day. So no actual deprivation of a property interest had occurred. But furthermore- I would ask you, you would agree that there are two parts to the analysis. One, whether a constitutional violation occurred. And then two, whether that law was clearly established in our circuit. And we can do those questions in either order. Does it matter? No, Your Honor, I can address- As a Court, we could take either of those questions. We don't necessarily have to do both. For example, we could just cut to the qualified immunity question based upon an absence of clearly established law. Yes, Your Honor. So I think your friend on our side, his authority, I think is a 1992 case in the 7th Circuit. What's your view? Your Honor, that case can be very easily distinguished because within that case, that individual was told within the meeting, you can resign now- Are you saying the 7th Circuit recognized procedural due process right against constructive discharge, but that the facts there were different? Or are you saying it didn't recognize any sort of right? The facts are very different, and I would distinguish it primarily based upon the facts here. Because in that case, as well as several of the other cases cited by plaintiffs, there are situations where somebody is brought into a meeting and told, you can either resign during this meeting or we're going to discharge you. Or they've been informed, for example, in the Manning v. Hazel Park case that plaintiff cites, they've been informed the City Council has already made the decision. The Michigan State Court of Appeals case, right? I believe so, Your Honor. The point to keep in mind is all those cases deal with a situation in which the person has been informed that a decision has already been made. And that is the furthest thing that we have from the incident case here, in which not only was she informed that this was an investigative meeting, it was scheduled to resume the very next day. In terms of constructive discharge, I don't believe that a case can be made for constructive discharge here, because under this Circuit's opinions, there has to be a showing of deliberately intolerable working conditions, as well as an intention of forcing an employee to quit. I would turn the Court's attention to the case of Williams v. Detroit Department of Education, which was an opinion of this Court from 2007, as well as Laster v. City of Kalamazoo, which is an opinion from this Court in 2014. In Williams, the Court rejected the loss of ability to continue accruing credit towards a pension as a basis for a constructive discharge claim. So it's directly on point here, in which this Court has said, well, we're really not going to look at that kind of information being given and say that's a constructive discharge. Primarily because, as in this case, there's no chance for an inhospitable working condition to form. It's been less than one day since the actual potential infractions had occurred. Laster v. City of Kalamazoo is also very important, because that case says that bad information is not evidence of a hostile working condition, nor is it an intention to force an employee to quit. In that case, a police officer was informed that if he were found to be terminated, that he would lose his health insurance benefits during any union grievance procedure. And the Court found factually that was not true, but they said that that bad information can't actually be a source of the creation of an inhospitable working condition. I also don't give credit to the argument that Plaintiff was under the impression that she would lose her pension in any respect. In fact, she's the one that brought up that question, and the TCAPS officials, including Dr. Burke, were merely explaining what could occur in that instance. She testified in her deposition that she had an understanding that her pension was vested and that that wasn't an issue that she was concerned about losing the entirety of her pension. Lastly, Your Honor, because there's no ability to establish the deprivation of a property interest here, all due process was afforded and there is not a showing of constructive discharge that would allow her to get around those issues. There's no clearly established violation of a constitutional right, and qualified immunity should apply to Dr. Burke. There's some state law claims that the Plaintiff asserted? There was, Your Honor. They were remanded. So nothing's happened with those claims yet? Your Honor, they are currently, I believe, on appeal in the Michigan Court of Appeals. Okay. What happened to the trial court? Your Honor, we, I believe, were successful in the claims and we are appellees in that action. I have no… That was not a curveball. I was just curious. You seem a little trepidatious about answering, but that's okay. And, Your Honor, my apologies. I had not been handling that portion of the matter as much, but I believe that I have made a full argument to the court. So unless the court has any questions, I will rest my case. Okay. Great. Thank you. Thank you very much, Your Honor. Mr. Alwell, you have three minutes. Thank you, Your Honor. Regarding the fact that a misstatement or misrepresentation or devious answers or being told things by the employer cannot cause a constructive discharge is contrary to the opinion of the district court. The district court recognizes that is the law in this circuit and that is the law in virtually every circuit. The appellee in the decision talking about that we have to prove intent, that is not the rule. The Spring case that I cite you in the Seventh Circuit said you didn't have to prove intent. The cases cited therein, no intent. And I believe there was a conflict between the circuits for a number of years. But in 2016, and I cannot remember the name of the case, but I believe the U.S. Supreme Court specifically said you don't have to show intent because you could never get inside the head of the employer to actually prove is a prima facie case what their intent is. It is enough that from reviewing all the circumstances in total that you can imply that this person was led to a constructive discharge, which is what happened in this case. Mr. Alwell, I'm sorry to interrupt you, but I want to follow up on Judge Radler's question to Brother Counsel, which has to do with whether or not this was a clearly established right. What precedential case can you cite which demonstrates that there was a clearly established right either to counsel or anything that is part of this due process claim here? I think it was just general due process principles that you cannot lie to extract. What they're saying is, okay, we can't do something if you get all the way up. The Teacher Tenure Act says that you cannot terminate for an arbitrary or capricious manner. If we show a constructive discharge, by definition, they are terminated. If we can show the termination is arbitrary and capricious, that relates back to the termination under the Teacher Tenure Act. If they lie, if they deceive, if they misrepresent, that is a termination through an arbitrary and capricious process that violates her due process property rights as well as her liberty rights of the humiliation and everything that what Cindy Burke was going to suggest that could have occurred. All were not true. It was all based on a FERPA violation. Your Honor, you asked about the exhaustion of remedies. It is very clear, and we have that case of Riccati, if I'm pronouncing it correctly, where a person was in a situation between a union and non-union teacher. He did not exhaust his remedies. It is generally the rule, granted, I grant you, that it is generally a rule you're supposed to exhaust your union remedies. Where the union representative is filing a grievance at you at the same time she's supposed to be representing you, I think that is reasonably futile. This is a terrible decision, Your Honor. We believe and we ask and request that you reverse it. Thank you so much. Thank you, Counsel. The case will be submitted.